Bobby Joe Allen appeals the circuit court's summary denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked his April 21, 1998, guilty-plea conviction for unlawful breaking and entering a vehicle and his resulting sentence, as a habitual offender, of 15 years' imprisonment.[1] Allen did not appeal his conviction.
On October 20, 2000, Allen filed the present Rule 32 petition. In his petition, Allen alleged that his sentence of 15 years' imprisonment exceeded the maximum authorized by law because, he said, the trial court improperly sentenced him as a habitual felony offender. In this regard, Allen specifically claimed: (1) that the State failed to give him notice of its intent to invoke the Habitual Felony Offender Act; (2) that although the case action summary reflects that he stipulated at the sentencing hearing to having one prior felony conviction, he in fact did not stipulate to the prior conviction; and (3) that the State failed to prove his prior conviction for purposes of sentence enhancement. The State filed a motion to dismiss Allen's petition on October 31, 2000.
On November 13, 2000, at 1:24 p.m., the circuit court issued the following order summarily denying Allen's petition:
 "The above-styled matter came before this Court upon the [p]etitioner, Bobby Joe Allen's Rule 32 [p]etition, and upon the State's Response and Motion to Dismiss. Petitioner alleges that his sentence was improperly enhanced. Petitioner waived this complaint by failing to raise said issue on direct appeal.
". . . . *Page 266 
 "If the trial judge has personal knowledge of the facts underlying any allegation in the Rule 32 Petition, the judge may deny those claims without further proceedings so long as the specific reason[s] for denial are stated in the written order. Petitioner plead[ed] guilty before this judge to Breaking 
Entering a Motor Vehicle to commit [a] felony or theft, a Class `C' felony, and petitioner further stipulated to having a prior felony conviction. The Court sentenced the petitioner to 15 years in the State Penitentiary and suspended the entire sentence and placed the petitioner on supervised probation for 2 years. Thereafter, this judge revoked petitioner's probation and petitioner was ordered to serve his 15-year sentence. . . .
 "The petitioner was properly sentenced within the range authorized by the Alabama Habitual Felony Offender Act; it is, therefore,
 "ORDERED, ADJUDGED and DECREED BY THE COURT that [p]etitioner's Rule 32 petition is dismissed."
(C. 18.)
On the same day at 1:50 p.m., Allen's response to the State's motion to dismiss and a motion to amend his Rule 32 petition (presenting two additional claims) were stamped as filed by the circuit clerk. The certificate of service for these two documents was dated November 7, 2000, six days before the circuit court issued its order. The record reflects that the circuit court did not rule on Allen's motion to amend. On November 29, 2000, Allen filed a motion entitled "Motion to Amend Court's Finding and Judgment," in which Allen alleged that the circuit court had erred in not ruling on the motion to amend his petition. (C. 23.) The circuit court denied the motion.
On appeal, Allen does not pursue the three claims presented in his petition; therefore, those claims are deemed to be abandoned. See, e.g.,Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995) (holding that "[w]e will not review issues not listed and argued in brief"). Instead, Allen challenges the circuit court's failure to consider the amendment to his petition and to rule on a motion to obtain a transcript of his guilty-plea proceedings.
Allen contends that the circuit court erred in not ruling on his motion to amend his petition and in not considering in its ruling the two additional claims he presented in the amendment. Allen maintains that the circuit court should have considered his amendment as having been timely filed, even though it was not received by the court until after the court had issued its order summarily denying his petition because, he says, he gave the motion to amend to prison officials for mailing on the day he signed the certificate of service-November 7, 2000. Therefore, Allen argues, his amendment should be deemed to have been "filed" on November 7, six days before the circuit court denied his petition, and the circuit court should have ruled on his amended claims. We disagree.
We recognize that a Rule 32 petitioner is considered to have "filed" his petition when he gives the petition to prison officials for mailing, not when the circuit court receives the petition. See Ex parte Powell,674 So.2d 1258, 1259 (Ala. 1995); Lucas v. State, 722 So.2d 822, 823
(Ala.Crim.App. 1998); and Holland v. State, 621 So.2d 373, 375
(Ala.Crim.App. 1993). We likewise recognize that a Rule 32 petitioner's notice of appeal to this court and a petition for a writ of certiorari in the Alabama Supreme Court are also deemed to have been "filed" when the petitioner hands those documents over to prison officials for mailing and not when *Page 267 
the appellate court receives them. See Rule 4(c), Ala.R.App.P.; Ex parteJones, 773 So.2d 989, 990 (Ala. 1998); and Ex parte Williams,651 So.2d 569, 570-71 (Ala. 1992). However, we do not believe that these rules are applicable to the present case.
The reason for considering pro se Rule 32 petitions, notices of appeal, and petitions for a writ of certiorari to be "filed" on the day those documents are given to prison officials for mailing and not when they are received by the appropriate court is because of the filing deadlines associated with those documents. See Rule 32.2(c), Ala.R.Crim.P.; Rule 4(a)(1), Ala.R.App.P.; and Rule 39(c)(2), Ala.R.App.P. In Houston v. Lack, 487 U.S. 266 (1988), the United States Supreme Court recognized the unique situation that pro se petitioners are placed in when facing the filing deadlines associated with notices of appeal:
 "The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped `filed' or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date that the court received it. Pro se
prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se
prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped `filed' on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access — the prison authorities-and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."
487 U.S. at 270-72.
This quotation appears in, and was the foundation for, the Alabama Supreme Court's holding in Ex parte Williams, supra, *Page 268 
that a pro se petitioner's petition for a writ of certiorari, although received by the Supreme Court four days after the deadline for filing had lapsed, was nevertheless timely filed because, the Court said, the petitioner had delivered the petition to prison officials for mailing before the time deadline. The Court reasoned:
 "We are not persuaded that Rule 25, [Ala.R.App.P.,] is to be rigidly interpreted in the situation of a pro se prisoner who, by the circumstances of his incarceration, has a particular lack of control over papers to be mailed to the clerk of this Court. The Committee Comments to Ala.R.App.P. 1, which defines the scope of our appellate rules, state that `it is the policy of these rules to disregard technicality and form in order that a just, speedy and inexpensive determination of every appellate proceeding on its merits may be obtained.' To rigidly interpret Rule 25 in this instance would be unjust and, therefore, would not foster this policy.
". . . .
 "We agree with the reasoning in Houston v. Lack and hold that under Rule 25 a pro se prisoner's filings shall be deemed filed upon the prisoner's tendering them to prison officials. Rule 25, taken in context of the goals of the Alabama Rules of Appellate Procedure and given the compelling grounds discussed above, is flexible enough to allow a paper to be deemed filed upon its proper receipt by a prison official."
Williams, 651 So.2d at 570-71.
Unlike the initial filing of a Rule 32 petition or the filing of notices of appeal and petitions for the writ of certiorari, however, most supplemental filings associated with Rule 32 petitions have no set time within which they must be filed. To broadly construe Rule 32 so as to permit filings having no deadlines to be considered to have been "filed" when they are delivered to prison officials for mailing rather than when they are received by the court would not further the laudable policy discussed in Williams-to assist a pro se petitioner, who has a particular lack of control over the filing of papers in the trial and the appellate courts, to meet jurisdictional filing deadlines. Rather, the probable effect of such a rule would be to delay, or even negate, rulings on pro se petitions. In this case in particular, if we were to hold that Allen's motion to amend was "filed" on November 7, 2000, the day he ostensibly signed the certificate of service and handed it over to prison officials for mailing, the circuit court would be required to set aside its denial of Allen's Rule 32 petition when it did not know, and could not have known, that an amendment was in the mail. This would place circuit courts in the untenable position of either having to wait a long period of time before issuing rulings on pro se petitions on the chance that a petitioner may have mailed an amendment to the petitions, or having to set aside rulings, perhaps on a frequent basis, whenever they receive an amendment after a ruling has been issued, if the pertinent document indicates that it was given to prison officials for mailing before the ruling. Amendments to Rule 32 petitions, although discretionary with the trial court, should normally be freely allowed, if necessary for a full and fair determination on the merits. See, e.g., Talley v. State,802 So.2d 1106, 1107-08 (Ala.Crim.App. 2000). However, such amendments are permitted only "prior to the entry of judgment." Rule 32.7(b), Ala.R.Crim.P.
The potential for abuse of a rule that would allow amendments to Rule 32 petitions that are received by the circuit court after the court has issued its ruling, but that were given to prison officials for mailing before the court's ruling, would be *Page 269 
staggering. Both trial courts and appellate courts are already in the difficult position of having to determine when Rule 32 petitions, notices of appeal, and petitions for the writ of certiorari are delivered to prison officials for mailing. In reality, the courts of this state are, at times, at the mercy of pro se petitioners when it comes to determining the date on which documents were delivered to prison officials for mailing. Most of the time, the only evidence of the date pro se petitioners delivered their documents to prison officials for mailing are the claims made by the pro se petitioners in those documents. Yet, pro se petitioners obviously have an incentive to misrepresent that date to meet whatever time deadlines they are facing. The burden of determining when pro se documents are given to prison officials for mailing is readily bearable by both the trial courts and the appellate courts as they strive to protect the individual rights of pro se petitioners regarding time-sensitive filings. In that context (i.e., in balancing the goals of the Alabama Rules of Appellate Procedure and the Alabama Rules of Criminal Procedure to ensure a workable rule that would protect a pro se petitioner's rights), the balance has been struck in favor of the protection of individual rights. See, e.g., Jones, supra (notice of appeal was deemed to have been timely filed based on the date on the certificate of service and the postmark on the envelope containing the notice, which was sent by certified mail to the circuit clerk); Williams, supra (petition for a writ of certiorari was deemed to have been timely filed where the petitioner stated that he had given his petition to prison officials to be mailed within the time prescribed by law for filing and he filed two statements from "other persons" to the same effect); andHolland, supra (Rule 32 petition was deemed to have been filed within the two-year limitations period based on the petitioner's allegation in an unverified certificate of service that he had given the petition to prison officials for mailing within the two-year limitations period, which allegation went unchallenged by the district attorney). But see Mims v.State, 650 So.2d 619 (Ala.Crim.App. 1994) (holding that a mere unverified assertion by a petitioner that he gave his Rule 32 petition to prison officials for mailing within the two-year limitations period is insufficient to show the date of filing). However, to extend the rule enunciated in Jones, Williams, and Holland to the situation here-where the petitioner was not faced with time constraints-would be to invite abuse by petitioners. Taking into consideration the objective of the Rules of Criminal Procedure — "to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving public welfare," Rule 1.2, Ala.R.Crim.P.-we decline to fashion a rule that would be so burdensome on circuit courts and that would result in a high potential for delay and abuse.
We note that Rule 4(c), Ala.R.App.P., which was adopted effective September 1, 2000, after the Alabama Supreme Court's decisions in Jones
and Williams, appears to support our holding. This rule, which states that pro se petitioners "may" prove the date they give their notices of appeal to prison officials for mailing by including a "notarized statement," reflects a concern over the manner in which pro se petitioners prove the date their filings are given to prison officials for mailing and perhaps signals a trend toward a less lenient approach in determining when pro se filings are deemed to have been "filed." The adoption of Rule 4(c), with its example of how pro se petitioners mayprove the date they gave their filings to prison *Page 270 
officials for mailing, suggests that the balance between a workable rule that ensures simplicity in procedure and eliminates unnecessary delay and a rule that protects individual rights is shifting, and the burden of determining the date on which a pro se filing is delivered to prison officials for mailing is being placed on the petitioner rather than on the courts. Under Rule 4(c), it seems, an unverified certificate of service, although unrefuted by the State, may not be sufficient to prove the date a petitioner delivered his Rule 32 petition to prison officials for mailing, see Holland, supra, and a mere allegation by a petitioner regarding the date he gave his petition for a writ of certiorari to prison officials for mailing, although supported by similar allegations by "other persons," may likewise not be sufficient proof, see Williams, supra. Although Rule 4(c) does not apply in this case, we discern from its adoption a subtle transition by the Alabama Supreme Court to a stricter approach to determining the date pro se filings are deemed to have been "filed." We follow a similar approach within the context of this case.[2]
We note that this case does not fall within this court's narrow holdings in Miles v. State, [Ms. CR-99-2547, March 2, 2001] ___ So.2d ___ (Ala.Crim.App. 2001), and Talley v. State, supra. In both Miles andTalley, the petitioners were granted leave to file amendments to their Rule 32 petitions; they were ordered to file those amendments within 30 days of the date of the circuit courts' orders. In Miles, the petitioner had mailed his amendment within the 30-day period granted by the circuit court, but the court did not receive the amendment until after the 30-day period had expired. This court held that the amendment was "filed" on the day the petitioner had mailed it (or had given it to prison authorities for mailing), and not when the circuit court had received it. In Talley, the circuit court summarily denied the initial petition before the 30-day period for filing the amendment had expired. This court held that the circuit court's refusal to consider the amendment (which apparently was filed within the 30-day period but received after the circuit court had denied the petition) was error and remanded the cause for the circuit court to consider the claims in the petitioner's amendment. In bothMiles and Talley, the petitioners were faced with time deadlines, albeit imposed by the court rather than by a procedural rule or statute; thus, requiring the circuit courts in those cases to consider the amendments filed by the petitioners within the time imposed by the court was consistent with those cases cited above dealing with the initial filing of petitions, notices of appeal, and petitions for a writ of certiorari.
However, in the present case, Allen was not granted a specific time frame within which to file an amendment to his petition, and he was not faced with a deadline. He was not in the same position as the petitioners in Miles and Tally because he was not required to rely on prison officials to ensure that his amendment was filed within a certain time. Therefore, we hold that Allen's motion to amend his petition was not timely filed because it was not received by the circuit court until after that court had issued its order denying Allen's Rule 32 petition; we further hold that the circuit court did not err in not ruling on or considering Allen's amended claims.
Allen also contends that the circuit court erred in not ruling on his "Motion to Subpoena Transcript of Colloquy and of Other Proceedings," which he filed with *Page 271 
his petition. (C. Supp. 4.) As Allen concedes in his brief to this court, the circuit court never ruled on this motion. In addition, Allen never objected to the circuit court's failure to rule on the motion. Because Allen suffered no adverse ruling from the circuit court, this issue is not properly before this court for review. See, e.g., Woods v.State, 790 So.2d 1014, 1016 (Ala.Crim.App. 2000) (holding that "[i]n order for an issue to be preserved for appellate review, there must be an adverse ruling on the record").
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.
[1] Allen's sentence was suspended, and he was placed on two years' probation. It was only after his probation was revoked and he was ordered to serve his 15-year sentence that Allen filed his Rule 32 petition.
[2] We note that Allen attached to his amendment a notarized
certificate of service averring that the amendment was being placed in the mail on November 7, 2000.