SHAW, Judge.
Rickey Burgin appeals the circuit court’s summary denial of his Rule 32, Ala. R.Crim.P., petition for postconviction relief, in which he attacked his 1998 conviction for capital murder, see § 13A-5-40(a)(10), Ala.Code 1975, and his resulting sentence of life imprisonment without the possibility of parole. This Court affirmed Burgin’s conviction and sentence on direct appeal. See Burgin v. State, 747 So.2d 916 (Ala.Crim.App.1999). A certificate of judgment was issued in Burgin’s case on November 12, 1999.
Burgin filed the present petition on November 9, 2000. He filed amendments to his petition on February 1, 2001, and again on February 15, 2001. On March 5, 2001, the State filed a response and motion to dismiss Burgin’s petition. On March 7, 2001, Burgin filed another amendment to his petition. The circuit court summarily denied Burgin’s petition, as amended, on March 22, 2001.[1]
On appeal, Burgin contends that the circuit court erred in summarily denying his petition without affording him an eviden-tiary hearing because, he says, his claims are meritorious on their face. In his petition and the amendments to that petition, Burgin presented over 30 claims, all of which were based on allegations that he was denied the effective assistance of counsel both at trial and on appeal.[2]
After reviewing Burgin’s petition, we find that the majority of Burgin’s claims are either meritless or were not pleaded with sufficient specificity to warrant any further proceedings. See Rule 32.3, Ala. R.Crim.P. (“The petitioner shall have the burden of pleading ... the facts necessary to entitle the petitioner to relief.”); and Rule 32.6(b), Ala.R.Crim.P. (“The petition must contain a clear and specific statement *164 of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”)- Therefore, summary denial of those claims was proper.
However, the State argues, and we agree, that a remand of this case to the circuit court is necessary for further proceedings as to two of Burgin’s claims, both of which were pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b) and which, if true, may entitle Burgin to relief.
Burgin contends that his trial counsel was ineffective for not objecting to the trial court’s alleged failure to swear'in the jury venire before the voir dire examination. In its response and motion to dismiss, the State argued that the venire was sworn and that Burgin’s claim in this regard was meritless. However, the record from Burgin’s direct appeal is silent as to whether the venire was sworn. The circuit court had before it conflicting allegations regarding whether the venire was properly sworn. In its order summarily denying Burgin’s petition, the circuit court found that “the petition is without merit,” but it did not make specific findings of fact regarding whether the venire was sworn. (C. 233.) From the record before us, we simply cannot evaluate the merits of Bur-gin’s claim that his counsel was ineffective for not objecting to the alleged failure to swear the venire without knowing whether the venire was, in fact, sworn. See, e.g., Ex parte Hamlett, 815 So.2d 499 (Ala.2000), and Fortner v. State, 825 So.2d 876 (Ala.Crim.App.2001).
Burgin also contends, in two contradictory arguments, that his counsel was ineffective (1) for not presenting evidence to the trial court indicating that the prosecutor had called witness Pearlie Mae Reed, Burgin’s girlfriend and the mother of his child, for the sole purpose of impeaching her with a prior inconsistent statement, and (2) for not investigating Reed’s testimony in order to discover evidence indicating that she had recanted her statement to police before trial and that the prosecutor knew that she had recanted her statement. Shortly after the murders, Reed gave a statement to police in which she stated that Burgin had confessed to her that he had been involved in the murders. At trial, Reed testified that Burgin had never confessed to her. The State then impeached her using her prior inconsistent statement. Reed admitted that she had made the statement to police, but she testified that the statement to the police was a lie that she made up because she was mad at Burgin at the time she made the statement.
On direct appeal, Burgin argued that the State had called Reed to testify, knowing she was a hostile witness, for the sole purpose of getting before the jury evidence of her prior statement, which would otherwise have been inadmissible hearsay, and that the trial court had erred in allowing the State to impeach its own witness. This Court held that the State was properly allowed to impeach its own witness under Rule 607, Ala.R.Evid., and that, although the record showed that Reed was a reluctant witness, it did not support Bur-gin’s contention that the prosecutor had called Reed to testify solely to get before the jury evidence of her prior statement. In holding that the State was properly allowed to impeach Reed with her prior statement, however, this Court cautioned:
“We agree with those federal cases that hold that ‘the right to impeach one’s own witness is not absolute and may be held inapplicable due to abuse.’ C. Gamble, McElroy’s Alabama Evidence, *165 § 165.01(6)(b) (5th ed.1996), citing United States v. Kane, 944 F.2d 1406, 1411 (7th Cir.1991).
“ ‘[Rule] 607 allows the government to impeach its own witness. See Fed.R.Evid. 607. However, “ ‘the government must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony.’ ” United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th Cir.1990) (quoting United States v. Whitson, 587 F.2d 948, 952-58 (9th Cir.1978)). Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible. Id. A determination must be made as to whether the government examined the witness for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible. Id.’
“United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.), cert. denied, 515 U.S. 1110, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995). ‘It would be an abuse of the rule ... for the prosecution to call a witness that it [knows mil] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence ....’ United States v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984). However, a prosecutor may call a witness it knows may be hostile, and it may impeach that witness’s credibility. Surprise is not a necessary prerequisite to impeaching one’s own witness under Rule 607. United States v. Palacios, 556 F.2d 1359 (5th Cir.1977). Even if the prosecution had reason to believe that a witness would be reluctant to testify, it should not be bound by that knowledge when deciding to call a witness, because ‘an attorney is entitled to assume that a witness will testify truthfully’ once the witness is in a court of law and is under oath. United States v. Patterson, 23 F.3d 1239, 1245 (7th Cir.), cert. denied, 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994). A prosecutor’s decision to call such a witness is subject to a good-faith standard, and it is ‘always open for the defendant to argue that the probative value of the evidence offered to impeach the witness is clearly outweighed by the prejudicial impact it might have on the jury, [pursuant to Rule 403, Ala. R.Evid.], because the jury would have difficulty confining use of the evidence to impeachment.’ United States v. Webster, 734 F.2d at 1193.”
Burgin, 747 So.2d at 918-19 (emphasis added).
Burgin argues that Reed had told the prosecutor before his trial that her statement to police was a lie and that, knowing that Reed would not give useful evidence, the prosecutor nevertheless called Reed as a witness, thus showing that the prosecutor’s sole purpose for calling Reed was to introduce Reed’s prior statement “in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence.” Burgin maintains, in alternative arguments (1) that his counsel knew that Reed had told the prosecutor before trial that her prior statement was a lie and that his counsel should have presented evidence to that effect to the trial court when counsel objected to Reed’s testimony, and (2) that his counsel did not know that Reed had told the prosecutor before trial that her prior statement was a lie because his counsel did not properly investigate Reed as a witness in order to discover that she had recanted her statement. In each argument, Burgin maintains that had his counsel properly investigated and/or presented evidence indicating *166 that the prosecutor knew before trial that Reed had recanted her statement to police, then his counsel could have shown that the prosecutor’s sole purpose for calling Reed as a witness was to get before the jury the substance of her prior statement, and Reed would have been prohibited from testifying.
In support of his claims, Burgin attached to his petition an affidavit from Reed, in which she stated that she had told the prosecutor on three different occasions before Burgin’s trial that her statement to police had been a lie and that she did not want to testify against Burgin, and an affidavit from his mother, Debra Burgin, in which she stated that she had told Bur-gin’s counsel that Reed had told the prosecutor that her prior statement to the police was a he. The State did not refute these claims in its motion to dismiss Burgin’s petition and, as noted above, the circuit court made no specific findings regarding any of Burgin’s claims.
As with the previous claim, we simply cannot determine the merits of Burgin’s claims in this regard without knowing whether the prosecutor knew, before Bur-gin’s trial, that Reed had recanted her statement to police and called Reed as a witness solely to get before the jury evidence of Reed’s prior statement; whether Burgin’s counsel had evidence to that effect that could have been, but was not, presented to the trial court; and whether, if Burgin’s counsel did not have evidence to that effect, such evidence could have been discovered had counsel properly investigated the matter.
Therefore, we remand this case for the circuit court to address the merits of those ineffective-assistance-of-counsel claims discussed above and to make specific findings of fact regarding each claim. On remand, the circuit court may either conduct an evidentiary hearing or take evidence in the form of affidavits, written interrogatories, or depositions. See Rule 32.9(a), Ala. R.Crim.P. Due return shall be filed with this Court no later than 42 days from the date of this opinion. The return to remand shall include the circuit court’s written findings along with a transcript of the evidentiary hearing, if any, or other evidence taken by the court.
REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. Burgin filed another amendment to his petition on March 26, 2001. However, because the circuit court had already denied Burgin's petition, that amendment was untimely. See Allen v. State, 825 So.2d 264 (Ala.Crim.App.2001).

. Burgin was represented by the same counsel at trial and on appeal.