[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1115 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1116 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1117 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1118 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1119 
In March 1995, Anthony Boyd was convicted in the Talladega Circuit Court of murder made capital because it occurred during the course of a kidnapping in the first degree. See §13A-5-40(a)(1), Ala. Code 1975. The jury recommended by a vote of 10-2 that the death sentence be imposed. The trial court accepted the jury's recommendation and sentenced Boyd to death. This court affirmed the conviction and sentence. Boyd v. State,715 So.2d 825 (Ala.Crim.App. 1997). Boyd now appeals from the circuit court's dismissal of his postconviction petition filed pursuant to Rule 32, Ala. R.Crim. P. We affirm.
On direct appeal of Boyd's conviction and death sentence, this court, quoting the trial court's order, summarized the evidence presented at Boyd's trial:
 "`The victim of this crime was Gregory Huguley. The participants in this capital murder are the defendant, Anthony Boyd, Shawn Ingram, Marcel Ackles and Quintay Cox. All of these participants played an active role in the abduction and the murder of the victim. All were coconspirators and accomplices.
 "`On July 31, 1993, Anthony Boyd, along with Shawn Ingram and Marcel Ackles, were looking for Gregory Huguley, a/k/a "New York," because Gregory Huguley had gotten cocaine from them several days before and he had failed to pay up. The charge for the cocaine was $200.00. These men were later joined by Quintay Cox, who provided a 9-millimeter Mack 11 automatic pistol. These men continued their search for Gregory Huguley and in the early evening of July 31, 1993, they spotted "New York" on 15th Street in Anniston, Alabama. At this time they were riding in a blue van that Marcel Ackles had rented. The van approached "New York" and then stopped. Shawn Ingram took the Mack 11 automatic pistol and walked over to "New York" and told him to come here. "New York" hesitated and then Shawn grabbed "New York" and pushed him into the van and onto the floor by the first bench seat. After leaving the scene of the abduction, Quintay Cox [was] let out at Cooper Homes and [was] instructed to follow the others. The first stop of the defendant and the participants was at a gasoline station, where Marcel Ackles got out and purchased some gasoline in a plastic container. Then all of the participants, including the defendant and the victim, proceeded to a baseball field in the Munford community in North Talladega County, Alabama. During this trip Gregory Huguley was made to lie down on the floor board of the van by defendant Boyd and co-defendant, Shawn Ingram. He kept saying to his abductors, "Do not kill me. I will get your money." When the participants arrived at the baseball field between 7:00 p.m. and 8:00 p.m., Shawn Ingram made "New York's" lie down on a bench. Then Marcel Ackles taped "New York" hands and mouth and the defendant, Anthony Boyd, taped his feet, all with duct tape. Then "New York" was taped to the bench. At this time, Shawn Ingram doused gasoline on "New York." Then he made a two-foot trail of gasoline from the bench where "New York" was lying. Then he lit the trail of gasoline which led to "New York" and caused him to be caught on fire. The defendant and the other participants watched "New York" burn for 10 to 15 minutes until the flame went out. During the burning "New York" *Page 1121 
rolled over a few feet. Then at this point in time he died as a result of the burning. Then the defendant and Shawn Ingram left in the van and returned to Anniston, and Quintay Cox and Marcel Ackles returned to Anniston in Quintay's car. On the way back to Anniston, Marcel said to Quintay, "We are all in this together. If one goes down, all go down." They arrived back in Anniston around 7:45 to 8:00 p.m.
 "`The murder of the victim, Gregory Huguley, was of the intentional killing type while the defendant committed murder during kidnapping in the first degree. The defendant possessed all of the requisite intent to sustain a conviction as charged in the indictment. He was an active and full participant in the death of the victim, Gregory Huguley.'"
715 So.2d at 832 (quoting the trial court's order in the record on direct appeal, C. 83-86).
The Alabama Supreme Court affirmed this court's judgment, Exparte Boyd, 715 So.2d 852 (Ala. 1998), and the United States Supreme Court denied certiorari review, Boyd v. Alabama,525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998). The certificate of judgment was issued on June 9, 1998.
On October 20, 1999, Boyd, through counsel,[1] filed a Rule 32, Ala. R.Crim. P., petition in the Talladega Circuit Court. On December 20, 1999, the State filed an answer to Boyd's petition. On that same date, the State also filed two motions for partial dismissal: one motion sought dismissal of claims pursuant to Rule 32.2(a), Ala. R.Crim. P., and the other sought dismissal of claims pursuant to Rule 32.6(b), Ala. R.Crim. P. The parties took no further action in the matter until December 29, 2000, when Boyd filed motions for discovery of the prosecution's files and of all "institutional records" pertaining to Boyd that had been generated by the Department of Corrections, the Department of Mental Health and Mental Retardation, the Board of Pardons and Paroles, and any medical or mental-health provider. Boyd also filed ex parte applications for funds to pay a forensic pathologist and a private investigator.
On January 31, 2002, the State filed an amended answer to Boyd's petition, accompanied by a motion for leave to file the amended answer.[2] In addition, the State filed a motion for dismissal. On February 28, 2002, Boyd filed a motion in opposition to the State's motion for dismissal; in his motion, Boyd averred that he intended to file an amended petition.
On May 23, 2002, Boyd filed an amended Rule 32 petition. In the amended petition, Boyd presented additional facts relating to claims contained in his original petition, as well as several new claims not contained in his original petition. The record reflects that Boyd never moved for leave to file the amended petition and that the circuit court never entered an order granting Boyd leave to do so.
On June 14, 2002, the circuit court held a hearing on the State's motion to dismiss Boyd's petition. At the hearing, the circuit court also heard arguments regarding Boyd's motions seeking discovery of the *Page 1122 
prosecution's files and of his institutional records and regarding Boyd's ex parte applications for funds to pay a forensic pathologist and a private investigator. Also at the hearing, Boyd submitted an offer of proof and affidavits allegedly in support of his petition.
On July 2, 2002, the State filed a reply to Boyd's offer of proof, arguing, among other things, that Boyd should not be allowed to amend his petition to include the offer of proof. On July 19, 2002, Boyd filed an additional motion in opposition to the State's motion for dismissal. On July 29, 2002, the State filed a response to Boyd's additional motion in opposition to the State's motion for dismissal. On August 28, 2002, the circuit court entered an order dismissing Boyd's Rule 32 petition.[3] The circuit court's order of dismissal did not refer to any matters contained in Boyd's amended petition. The record reflects that the circuit court never ruled on Boyd's discovery motions or on his ex parte applications for funds to pay a forensic pathologist and a private investigator. On October 8, 2002, Boyd filed a notice of appeal from the dismissal of his petition.
 I.
At the outset, we note that the following principles apply to appellate review of a circuit court's dismissal of a Rule 32 petition. Because Boyd was convicted of capital murder, his direct appeal included not only review of the issues presented by Boyd, but also included a "plain error" search of the record. SeeEx parte Boyd, 715 So.2d at 856; Boyd v. State,715 So.2d at 836. Thus, "even though this petition challenges a capital conviction and a death sentence, there is no plain-error review on an appeal from the denial of a Rule 32 petition." Dobyne v.State, 805 So.2d 733, 740 (Ala.Crim.App. 2000), aff'd,805 So.2d 763 (Ala. 2001).
"[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White,792 So.2d 1097, 1098 (Ala. 2001). However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, "[t]he standard of review on appeal . . . is whether the trial judge abused his discretion when he denied the petition." Elliott v. State, 601 So.2d 1118, 1119
(Ala.Crim.App. 1992).
"`"If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition."'" McGahee v. State, 885 So.2d 191, 201
(Ala.Crim.App. 2003) (quoting Grady v. State, 831 So.2d 646,648 (Ala.Crim.App. 2001), quoting in turn Reed v. State,748 So.2d 231, 233 (Ala.Crim.App. 1999)).
 II.
Boyd first contends that the circuit court erred when it dismissed his Rule 32 petition without considering the additional facts and claims presented in his amended petition. (Issues I and II in Boyd's appellate brief.) As noted above, the circuit court's order of dismissal did not refer to any matters contained in Boyd's amended petition. Boyd argues that the circuit court's order of dismissal should be vacated and that the cause should be remanded for the circuit court to consider the additional *Page 1123 
facts, and to rule on the additional claims, presented in his amended petition. Boyd has failed to preserve this issue for review.
It would appear from a review of the record that Boyd is correct in maintaining that the circuit did not consider, or rule on, the additional facts and claims presented in his amended petition. However, the record also reflects that Boyd never objected to the circuit court's failure to rule on the amended petition. As noted above, Boyd never moved for leave to file the amended petition, and the circuit court never entered an order granting Boyd leave to do so. Moreover, the circuit court never took any action indicating that it was granting Boyd leave to file an amended petition or that it would consider claims presented in an amended petition. Compare Borden v. State,891 So.2d 393, 395-96 (Ala.Crim.App. 2002) (cause remanded for circuit court to consider claims contained in amended Rule 32 petition where circuit court, after granting petitioner leave to file the amendment, entered an order of dismissal that did not sufficiently address claims presented in amended petition); andTalley v. State, 802 So.2d 1106, 1107 (Ala.Crim.App. 2001) (cause remanded for circuit court to accept amendment to Rule 32 petition where circuit court, after granting petitioner's motion for an extension of time within which to file an amendment, entered order of dismissal 22 days before the previously granted extension expired). Although Boyd's amended petition amounted to his first attempt to amend his pleadings, it was not filed until some 31 months after he had filed his original petition.[4]
It was Boyd's responsibility to invoke a ruling on the new pleadings; however, he voiced no dissatisfaction with the circuit court's failure to rule until his case arrived in this court, where the matter has been raised for the first time on appeal.
"`"[I]t is axiomatic that the trial court may not be put in error in the absence of any attempt to invoke a ruling of the court in the matters complained of."'" Bush v. State,717 So.2d 438, 441 (Ala.Crim.App. 1998), quoting Molina v. State,533 So.2d 701, 713 (Ala.Crim.App. 1988), quoting in turn Carter v.State, 30 Ala.App. 251, 253, 4 So.2d 195, 197 (1941). "Review on appeal is limited to matters as to which adverse rulings have been invoked at the trial level." Ruggs v. State,601 So.2d 508, 512 (Ala.Crim.App. 1992). "In order for an issue to be preserved for appellate review, there must be an adverse ruling on the record." Woods v. State, 790 So.2d 1014, 1016
(Ala.Crim.App. 2000).
The general rules of preservation apply to Rule 32 proceedings. See, e.g., Robinson v. State, 869 So.2d 1191, 1193
(Ala.Crim.App. 2003) (holding that the appellant's claim that the circuit court erred in failing to make specific findings of fact as to all claims in the appellant's Rule 32 petition was not preserved for review, because the appellant did not first present the claim to the circuit court); Allen v. State, 825 So.2d 264,270-71 (Ala.Crim.App. 2001), aff'd, 825 So.2d 271 (Ala. 2002) (holding, in an appeal from the denial of a Rule 32 petition, that the appellant's claim that the circuit court erred in not ruling on his motion to subpoena a transcript of his guilty plea proceedings was not preserved for review, because the circuit court never ruled on the motion and the appellant never objected to the circuit court's failure to rule on the motion); Thomas v.State, 766 So.2d 860, 870 n. 2 (Ala.Crim.App. 1998) (stating that the appellant's claim that the circuit court improperly adopted in toto an order drafted by the State, which allegedly *Page 1124 
failed to address several claims in the appellant's Rule 32 petition, was not preserved for review, because the appellant never objected to the circuit court's order denying his petition); Whitehead v. State, 593 So.2d 126, 130
(Ala.Crim.App. 1991) (holding that the appellant's claim that the circuit court failed to make specific findings of fact relating to issues raised at an evidentiary hearing on the appellant's postconviction petition was not preserved for review, because the appellant did not raise the issue in the circuit court);Morrison v. State, 551 So.2d 435, 436-37 (Ala.Crim.App. 1989) (holding that the appellant's claim that the circuit court improperly adopted the State's proposed findings of fact and conclusions of law in an order denying the appellant's postconviction petition was not preserved for review, because the appellant never objected to the circuit court's order).
Because Boyd never objected to the circuit court's failure to rule on his amended petition and because he suffered no adverse ruling on the amended petition from the circuit court, this issue is not properly before this court for review. Accordingly, to the extent that Boyd, in his brief on appeal, cites to and relies on allegations he raised only in his amended petition and not in his original petition — the dismissal of which is before us for review — we note that those allegations are not properly before us, and we will not consider those allegations in our resolution of this appeal.
 III.
Boyd contends that the circuit court erred when it dismissed his petition without ruling on his motions for Rule 32 discovery or on his ex parte applications for funds.[5] (Issue III in Boyd's appellate brief.)
As Boyd maintains, the circuit court never ruled on his discovery motions or on his ex parte applications for funds. However, Boyd never objected to the circuit court's failure to rule on those matters and never attempted to invoke a ruling of the circuit court as to those matters. Because Boyd suffered no adverse ruling from the circuit court, this issue is not properly before us for review. See Allen, supra, 825 So.2d at 270-71. See also Conners v. State, 837 So.2d 319, 322 (Ala.Crim.App. 2001), cert. denied, 837 So.2d 326 (Ala. 2002), overruled on different grounds, Ex parte Deramus, 882 So.2d 878 (Ala. 2003) (holding that a habeas petitioner failed to preserve for review a claim regarding the circuit court's failure to rule on his discovery *Page 1125 
motion, because the petitioner never objected to the court's failure to rule and suffered no adverse ruling); Ruggs, supra,601 So.2d at 512 (holding that the appellant failed to preserve for review a claim that the State had not complied with his discovery request, because the trial court had never ruled on the appellant's motion to compel discovery).
 IV.
Boyd contends that the circuit court erred in dismissing his petition without holding an evidentiary hearing. (Issue I in Boyd's appellate brief.) In his attempt to demonstrate to this court that he was entitled to an evidentiary hearing, Boyd cites us to information contained in and claims asserted in his amended petition, in addition to information and claims contained in his original petition. The State urges this court to refuse to consider the factual allegations and claims contained in Boyd's amended petition and reiterated in his brief on appeal. We found in Part II of this opinion that because Boyd suffered no adverse ruling from the circuit court as to his amended petition and because he never objected to the circuit court's failure to rule on his amended petition, Boyd's citation to allegations and claims raised only in his amended petition are not properly before this court.
 V. A. Legal Principles
Rule 32.3, Ala. R.Crim. P., provides, in pertinent part, that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." See, e.g., Fortenberry v. State,659 So.2d 194, 197 (Ala.Crim.App. 1994). Pursuant to Rule 32.6(b), Ala. R.Crim. P.:
 "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
See, e.g., Wilson v. State, 650 So.2d 587, 590 (Ala.Crim.App. 1994).
As this court has previously noted:
 "`An evidentiary hearing on a [Rule 32] petition is required only if the petition is "meritorious on its face." Ex parte Boatwright, 471 So.2d 1257 (Ala. 1985). A petition is "meritorious on its face" only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala. 1986).'
 "Moore v. State, 502 So.2d 819, 820 (Ala. 1986)."
Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App. 2003).
"Rule 32.6(b) requires that the petition itself disclose thefacts relied upon in seeking relief." Boyd v. State,746 So.2d 364, 406 (Ala.Crim.App. 1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So.2d 1370, 1373
(Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving thosealleged facts. *Page 1126 
Thus, a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition. To the contrary, Rule 32.7(d), Ala. R.Crim. P., provides for the summary disposition of a Rule 32 petition
 "[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b)], or is precluded [under Rule 32.2, Ala. R.Crim. P.], or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings. . . ."
"`Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition.'" Tatum v.State, 607 So.2d 383, 384 (Ala.Crim.App. 1992), quoting Bishopv. State, 608 So.2d 345, 347-48 (Ala. 1992), quoting in turnBishop v. State, 592 So.2d 664, 667 (Ala.Crim.App. 1991) (Bowen, J., dissenting); see also Rule 32.7(d), Ala. R.Crim. P.
"[A] judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon conduct that he observed." Ex parte Hill,591 So.2d 462, 463 (Ala. 1991). "If the circuit judge has personal knowledge of the actual facts underlying the allegations in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order." Sheats v. State, 556 So.2d 1094, 1095
(Ala.Crim.App. 1989).[6]
 B. Specific Claims 1. Claims of Ineffective Assistance of Counsel
Boyd alleges several instances of ineffective assistance of trial counsel. (See Issues I.A.1, I.A.2., I.A.3, and I.A.6 in Boyd's appellate brief.)[7] Before addressing Boyd's claims of ineffective assistance of counsel, we note the following legal standards relevant to such claims:
 "`"In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test *Page 1127 
articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`"`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
 "`"466 U.S. at 687, 104 S.Ct. at 2064.
 "`"`The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."' Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, [541 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. `A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "`"The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). `Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance." [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.' Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6
(Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985). "This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326
(Ala.Cr.App. 1994).
 "`"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the *Page 1128 
time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "`"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065
(citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`"`Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
 "`"Daniels, 650 So.2d at 552.
 "`"`When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'
 "`"Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
 "`"In a Rule 32 proceeding, the petitioner has `the burden of pleading and [later] proving by a preponderance of the evidence[,] the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala. R.Crim. P. See Fortenberry v. State, 659 So.2d 194
(Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326 (Ala.Cr.App. 1994); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992)."
 "`Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997), cert. denied, 717 So.2d 6 (Ala. 1998).
 "`Moreover, "[a] finding of no plain error is one factor to consider when assessing the performance of counsel." Fortenberry, 659 So.2d 194, 200
(Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995), quoting Hallford, 629 So.2d 6, 10 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). "`A finding of no manifest injustice under the "plain error" standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).'" Williams v. State, 783 So.2d 108, 133 (Ala.Cr.App. 2000), quoting State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App. 1996). See also Thomas v. State, 766 So.2d 860 (Ala.Crim.App. 1998).'
 "Dobyne v. State, 805 So.2d 733, 742-44
(Ala.Crim.App. 2000)."
Hamm v. State, 913 So.2d 460, 480-82 (Ala.Crim.App. 2002). See also McGahee v. State, 885 So.2d 191 (Ala.Crim.App. 2003). *Page 1129 
 a. Claim I.C.1, paragraphs 16-21
In Claim I.C.1, paragraphs 16-21, of his petition, Boyd alleged that his trial counsel rendered ineffective assistance during the guilt phase of his trial by failing to "adequately investigate and challenge the State's capital-murder charge against [Boyd]." (C. 396.) Boyd alleged that his counsel "completely abdicated their responsibility to investigate thoroughly each and every possible avenue of defense, as well as every claim made by the State." (C. 397.) In addition, Boyd maintained that his counsel "failed to make an independent investigation of the case," including "the circumstances surrounding the offense." (C. 397.) As a result, according to Boyd, defense counsel "failed to uncover critical exculpatory evidence surrounding [Boyd's] alleged involvement in the death of the victim." (C. 397.) Boyd also alleged that defense counsel failed to challenge the constitutionality of his arrest and the circumstances surrounding his pretrial detention; failed to adequately cross-examine witnesses; and failed to object to "irrelevant and prejudicial evidence introduced by the State, abdicating their constitutionally mandated responsibility to subject the State's case to adversarial testing." (C. 397-98.)
With regard to this claim, the circuit court found as follows:
 "This claim, comprised of paragraphs 16-21 of the Rule 32 petition, is dismissed pursuant to Rule 32.6(b), as it is insufficiently specific. Ala. R.Crim. P., Rule 32.6(b). For example, paragraph 19 alleges that trial counsel failed to discover `critical exculpatory evidence surrounding [Boyd's] alleged involvement in the death of the victim,' yet the Rule 32 petition does not disclose what this evidence is or how it should have been uncovered by a reasonable lawyer. In addition, Boyd alleges that trial counsel were ineffective for failing to challenge the constitutionality of Boyd's arrest and the circumstances surrounding his pretrial detention, but the Rule 32 petition is silent as to how such a challenge would have been mounted. There is not a single claim in the Rule 32 petition alleging that Boyd's arrest was unconstitutional.
 "Further, it is alleged that Boyd's counsel should have `adequately' cross-examined witnesses, but the petition is silent as to what questions a reasonable lawyer would have asked but that were not asked by Boyd's counsel. Further, there is no allegation in this petition that if these questions were asked, that Boyd could establish prejudice.
 "Further, these allegations are erroneous on their face. For example, in paragraph 21, it is said that the State was allowed to win a conviction on the basis of unchallenged evidence. The record, however, reveals that counsel put on an alibi defense and challenged the testimony of Quintay Cox and Dominique Cox. Further, the defense challenged the testimony of Sharon Ackles through the testimony of Bertha Ackles. Thus, the petition is obviously incorrect in its unsupported conclusions and assertions.
 "In another example of assertions and conclusions made without specific facts, Boyd asserts that defense counsel had a duty to `investigate thoroughly each and every possible avenue of defense.' This is plainly wrong. Instead, `no absolute duty exists to investigate particular facts or a certain line of defense.' Chandler [v. United States], 218 F.3d [1305,] at 1317 [(11th Cir. 2000)]. `Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly.' Id. at 1318. *Page 1130 
See also, Id. (`Counsel is not required to present every nonfrivolous defense.'). If one examines this entire claim in Boyd's petition, one will notice that the petitioner fails to assert the existence of one specific piece of evidence that went undiscovered based on the deficient performance of his trial counsel. This cannot form the basis for a claim that is meritorious on its face.
 "Instead, the Court must look at what the attorney actually did. Cf. Smith v. Black, 904 F.2d 950, 977 (5th Cir. 1990) (`The claim that defense counsel did not "investigate the facts" is belied by numerous instances of sleuthing found in the record.'). In this case the defense put forth an alibi theory along with a theory that attacked the motives of Dominique Cox and Quintay Cox. In addition, trial counsel presented a defense and argued that because Shawn Ingram had the only gun and was the primary instigator and actor throughout most of the murder, according to witnesses, Boyd was forced to cooperate for fear of being killed if he refused. ([record from direct appeal,] R. 782-794)
 "In support of their defense theory, trial counsel called Willie Lynch, Nigel Raines, Bertha Ackles, Willie Watson, Catherine Jones, Felicia Jones, Felicia Parker, Charlene Wolf, Tracy McDonald, and LaGuina Pearson as witnesses in the guilt phase. All of the witnesses were completely separate from the State's witnesses in this case. These witnesses and their testimony completely destroy the baseless assertions in Boyd's petition that trial counsel conducted little or no investigation in this case.
 "A Court need not hold an evidentiary hearing on a claim of ineffective assistance of counsel on the effectiveness of attorneys based upon conduct that he observed. Ex parte Hill, 591 So.2d 462 (Ala. 1991). This Court observed the performance of trial counsel during Boyd's trial. Further, had trial counsel failed to adequately prepare and investigate this case so as not to be functioning as counsel within the meaning of the Sixth Amendment, the Court would have been able to ascertain this through counsel's performance.
 "Counsel's performance at trial, however, indicates that they were prepared and did mount a defense on behalf of Boyd. The Court finds that the defense mounted by trial counsel, challenging the motives of Dominique Cox, Quintay Cox, and Sharon Ackles, was reasonable. Further, the Court finds that attempting to portray Boyd as the victim of the gun-toting Ingram was also reasonable, under the circumstances. Finally, the Court finds that the attempt to call into question the State's timeline and to establish an alibi defense was reasonable. Thus, it would appear that counsel undertook a reasonable investigation in preparation for the trial. This finding is strengthened by the fact that Boyd's petition fails to allege one specific defense or piece of evidence not located by counsel.
 "Based on these reasonable lines of defense, trial counsel were effective in the Sixth Amendment sense. Even if Boyd were to specifically plead this claim in his petition, he would still not be entitled to a hearing or to relief. As noted in Chandler:
 "`There are countless ways to provide effective assistance in any given case.' Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. at 2065
[(1984)]. No lawyer can be expected to have considered all the ways. If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer *Page 1131 
did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And, our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.'
 "Chandler, 218 F.3d at 1315 n. 16. See also, Card
[v. Dugger], 911 F.2d [1494,] at 1507 [(11th Cir. 1990)] (`Although Card's current counsel makes quite clear that had he been trial counsel, the case would have been tried differently, this is not the test for ineffective assistance.'); Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir. 1990) (`We recognize that even representation by the most competent lawyer is no guarantee that all colorable issues will be raised.').
 "This Court cannot stress enough the importance of the fact that Boyd's Rule 32 petition does not offer specific facts in support of a deficient performance or prejudice argument. As the Court in Chandler
noted:
 "`If some reasonable lawyer might have not pursued a certain defense or called a certain witness, we fail to understand why we would order a new trial on the ground that the actual lawyer had not used the defense or witness in the first trial: at the new trial, a different lawyer (even a reasonable one) might again not use the witness or defense. If two trials are identical, one should not be constitutionally inadequate and the other constitutionally adequate.'
 "Chandler, 218 F.3d at 1315 n. 17. Without Boyd's allegations of what type of defense should have been mounted or investigated, under the circumstances, this Court cannot conclude whether some reasonable lawyer might have not pursued that defense at trial. Boyd, however, has the clear burden of pleading the facts necessary to entitle him to relief. Ala. R.Crim. P., [Rules] 32.3[and] 32.6(b).
 "Finally, although petitioner's claim is that his trial counsel should have done something more, `we first look at what the lawyer did in fact.' Chandler, 218 F.3d at 1320. Because, as noted above, what the lawyer actually did in investigating and preparing a defense was reasonable, as established through the record of the defendant's case-in-chief and the cross-examination employed by trial counsel, the Court's inquiry is complete. Id.
This claim, then, is summarily dismissed and Boyd is not entitled to an evidentiary hearing. Ala. R.Crim. P., [Rule] 32.7(d)."
(C. 464-69.)
We agree with the circuit court's findings, and we adopt them as part of this opinion. Boyd's claim does not provide a "clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Rule 32.6(b), Ala. R.Crim. P. (Emphasis added.) With regard to this claim, no tangible fact tending to establish counsel's allegedly inadequate performance was presented to the circuit court. As the circuit correctly found, Boyd's petition does not disclose the "critical exculpatory evidence" that should have been uncovered by his counsel; does not disclose "one specific piece of evidence that went undiscovered" based on the allegedly deficient performance of counsel; does not disclose any reasons why Boyd's arrest and pretrial detention were unlawful; does not disclose how counsel allegedly failed to adequately cross-examine witnesses or the information that was omitted as a result of the allegedly inadequate cross-examination;[8]
and does not disclose what type of *Page 1132 
defense that counsel should have investigated or should have mounted. Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded.
Moreover, the judge presiding over the Rule 32 proceedings also presided over Boyd's trial and dismissed this claim based on his own observations and his personal knowledge that Boyd's counsel were prepared and did mount a reasonable defense on Boyd's behalf. See Ex parte Hill, 591 So.2d 462, 463 (Ala. 1991);Sheats v. State, 556 So.2d 1094, 1095 (Ala.Crim.App. 1989). We have reviewed the record — including the transcript of the defense's case-in-chief and the cross-examination employed by Boyd's counsel — and find that it fully supports the circuit court's determination that what Boyd's counsel did in preparing and mounting a defense was reasonable.
Thus, Boyd has not alleged how his trial counsel's conduct was deficient or how the outcome of his trial would have been different had his trial counsel performed differently regarding this claim. See, e.g., Williams v. State, 782 So.2d 811, 825
(Ala.Crim.App. 2000); Brooks v. State, 695 So.2d 176, 182
(Ala.Crim.App. 1996). Therefore, Boyd has failed to state a claim of ineffective assistance of counsel under Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Boyd failed to state a claim upon which relief could be granted, summary disposition of this claim was appropriate.[9]
 b. Claim I.C.2, paragraph 22
In Claim I.C.2, paragraph 22, of his petition, Boyd alleged that his trial counsel rendered ineffective assistance by "fail[ing] to procure necessary expert assistance." (C. 398.) Boyd's entire claim in this regard was asserted as follows:
 "22. A criminal defendant's right to benefit of expert assistance is constitutionally recognized and protected. Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gayle v. State, 591 So.2d 153 (Ala.Crim.App. 1991). Trial *Page 1133 
counsel in [Boyd's] case failed to procure an expert to counter the testimony presented by the State regarding the victim's death. Had it not been for this error on the part of trial counsel, the result of the guilt phase of [Boyd's] trial would have been different."
(C. 398.)
With regard to this claim, the circuit court found, in pertinent part, as follows:
 "Boyd does not state what type of expert should have been obtained, and in what way such an expert would have countered the State's expert testimony.
 ". . . .
 ". . . Boyd's allegation is insufficient to warrant any further proceedings. See Williams v. State, 783 So.2d [108,] at 129-130 [(Ala.Crim.App. 2000)] (`His entire argument in his petition consisted of the following statement: "Trial counsel failed to use the services of a forensic expert. Therefore, the defendant did not have the benefit of a skilled forensic investigator who could analyze the forensic evidence presented by the state." . . . "[T]he circuit court properly found that the appellant had not satisfied the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. (C.R. 673.) In addition, the appellant did not satisfy the pleading requirements of Rule 32.3, Ala. R.Crim. P.'). Conspicuously absent from Boyd's petition are facts and allegations that would tend to establish that Boyd would have been entitled to the services of a court-funded expert. Ex parte Moody, 684 So.2d 114, 119 (Ala. 1996) (`[T]he indigent defendant must show, with reasonable specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the state or to support a critical element of the defense.') (Emphasis added.) Without such a showing in the averments of the Rule 32 petition, Boyd's petition fails to state a claim upon which relief may be granted, as he has not alleged facts that, if true, would establish deficient performance or prejudice by trial counsel.
 "The claim is dismissed."
(C. 469-71.)
We agree with the circuit court's findings, and we adopt them as part of this opinion. As with the previous claim, Boyd's claim in this regard does not provide a "clear and specific statement of the grounds upon which relief is sought, including fulldisclosure of the factual basis of those grounds." Rule 32.6(b), Ala. R.Crim. P. (Emphasis added.) The claim offers a conclusion — inadequate performance of counsel — where no facts creating the offered conclusion have been disclosed. As the circuit court correctly found, Boyd's petition does not disclose what type of expert counsel should have been obtained, or the manner in which any such expert would have countered the State's expert testimony. See Williams v. State, 783 So.2d 108, 129-130 (Ala.Crim.App. 2000), cited by the circuit court in its order of dismissal. This claim amounts to a bare general assertion of Boyd's subjective opinion that because he was convicted, his counsel should have performed differently. Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded.
Boyd has not alleged how his trial counsel's conduct was deficient or how the outcome of his trial would have been different had his trial counsel performed differently regarding this claim. Therefore, he has failed to state a claim of ineffective assistance of counsel under Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Boyd failed to state a claim upon which relief could be granted, summary disposition of this claim was appropriate. *Page 1134 
 c. Claim I.D.1, paragraphs 53-60
In Claim I.D.1, paragraphs 53-60, of his petition, Boyd alleged that his trial counsel rendered ineffective assistance by failing to adequately investigate and present mitigation evidence critical to Boyd's penalty-phase defense. Boyd's claim in this regard was asserted as follows:
 "53. It is essential that trial counsel in a capital case fully investigate the history of the client in preparation for the penalty phase of a capital proceeding. It is constitutionally required that the trial court and jury consider `as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). This includes any evidence about the defendant's history and life that may be considered by the jury or judge as a mitigating factor. Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Thus, [Boyd] was entitled to have all aspects of his background, family life, medical history, school records, and any other life experience that may be considered mitigating evidence presented to the jury and judge at the penalty phase of his capital trial. Counsel for [Boyd] fell far short of this constitutionally required mandate.
 "54. In order to have prepared properly for the penalty phase of [Boyd's] capital trial, counsel should have obtained complete and accurate information relevant to [Boyd's] medical history, educational history, employment and training history, family and social history, his correctional history, and any religious or cultural influences. American Bar Association, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 11.4.1(A)(2)(c) (adopted by the ABA house of delegates Feb. 7, 1989).
 "55. Counsel in [Boyd's] case completely failed these minimum requirements of an adequate investigation. `At the heart of effective representation is the independent duty to investigate and prepare [the client's case].' Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982). In this instance, effective preparation and investigation by defense counsel would have revealed a host of mitigating factors, which should have been presented at [Boyd's] penalty phase. This failure cannot be characterized as strategic, and therefore constitutes ineffectiveness, requiring that this Court reverse [Boyd's] sentence of death.
 "56. Counsel called several witnesses at [Boyd's] penalty phase to testify as to the defendant's character, but counsel never interviewed these witnesses prior to their testimony in order to determine what they would testify about on the stand. In addition, counsel did not make any attempt to explain the purpose of the mitigation phase to the witnesses so that they might know what the nature of their testimony should be. As a result, the witnesses offered no narratives of their own when testifying about [Boyd]: defense counsel merely asked them leading questions, to which they typically answered `yes' or `no,' completely undermining the power of their testimony. See, e.g., [record on direct appeal,] R. 885-87 (testimony of [Boyd's] younger brother, Sylvester Boyd).
 "57. In addition, defense counsel failed to talk to numerous witnesses, including family members and friends of [Boyd], who could have testified to [Boyd's] widespread positive impact in his community, his leadership abilities, *Page 1135 
and the manner in which he guided the young children around him away from trouble. These witnesses include, but are not limited to, Catherine Jones, Willie Watson, Charlene Jones, Anandis Jones, Mary Jean Jones, Terrie Parker, Pierre Jones, Charlene Jones, Tracy Jones, Felicia Jones, Monica Smelcher, Felicia Parker, Sinovia Turner, Deirdre Swindell, Ebony Swindell, Betty Singleton, Mary and Joseph Edwards, Kyle Boyd, Dorothy McKenny, Jennifer Staples, and Nobel Blackwell. Many of these people have known [Boyd] all his life and could have created a compelling picture of [Boyd] as the backbone of his community.
 "58. In particular, [Boyd's] aunt and uncle, Mary and Joseph Edwards, helped raise [Boyd], and defense counsel never even called them on the telephone to see if they might be helpful in the mitigation phase. Mrs. Patricia McGrew, [Boyd's] mother, keeps careful records of all family members and could have provided defense counsel with the names and addresses of all of these witnesses if counsel had questioned her on possible mitigation witnesses.
 "59. Although five of the witnesses listed above were indeed called to testify at the guilt phase (Catherine Jones, Willie Watson, Tracy Jones, Felicia Parker and Charlene Jones), defense counsel called them to testify only as to [Boyd's] whereabouts on the night of the crime. All of these witnesses would, however, have been extremely compelling mitigation witnesses since they have known [Boyd] all his life. They could have testified to their close relationship with [Boyd] and the extent to which [Boyd] took care of them.
 "60. Defense counsel's failure to adequately interview and prepare witnesses who testified in the penalty phase of [Boyd's] trial; his failure to interview and present numerous other witnesses who could have demonstrated compelling reasons why [Boyd's] life should have been spared; and his use, solely in the guilt phase, of witnesses who could have offered some of the most compelling mitigation evidence available resulted in extreme prejudice to [Boyd's] proceedings, requiring that this Court reverse his sentence. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."
(C. 407-09.)
With regard to this claim, the circuit court found, in pertinent part, as follows:
 "This claim of the petition, paragraphs 53-60, suffers from the same deficiencies as the allegation in Section I(C)(1) of the Rule 32 petition. Instead of alleging that a specific defense mounted by trial counsel was unreasonable and suggesting a specific alternate defense, Boyd instead makes numerous unsupported assertions with little or no specificity.
 "Boyd spends very little space in his petition setting forth the relevant caselaw governing ineffective assistance of counsel claims, instead relying on the non-binding [American Bar Association] guidelines. Although these guidelines are persuasive authority, and on a few occasions offer a baseline for examining counsel's performance, the guidelines do not accurately reflect the legal and factual realities of Sixth Amendment ineffective assistance of counsel jurisprudence.
 "Aside from [Boyd's] failure to set forth this claim in the context of the correct legal standard, Boyd's claim is insufficiently specific to warrant any further proceedings. Ala. R.Crim. P., [Rule] 32.6(b). For example, in paragraph 55 of the petition, Boyd asserts that `effective preparation and investigation *Page 1136 
by defense counsel would have revealed a host of mitigating factors, which should have been presented at [Boyd's] penalty phase.' (Boyd's Pet. at 18) Not a single mitigating factor that would have been revealed is asserted along with this claim. Thus, this paragraph is nothing more than a baseless allegation and conclusory statement with no specific facts alleged in support. For this reason, this claim is dismissed.
 "Boyd's petition completely avoids the subject of Lucia Penland's work as a mitigation specialist in the case. The Court appointed Penland [a mitigation specialist with the Alabama Prison Project] to assist trial counsel in preparation of the penalty phase. ([record on direct appeal,] R. 7) The record reveals that Penland interviewed Boyd on several occasions and interviewed his family members. ([record on direct appeal,] R. 35) Among those interviewed was Boyd's mother. ([record on direct appeal,] R. 35) Penland obtained the names of other potential witnesses from Boyd's mother. ([record on direct appeal,] R. 35) This material was prepared and submitted to trial counsel. ([record on direct appeal,] R. 35)
 "Ms. Penland's background included attending the NAACP Legal Defense Fund's Death Penalty conference each year, as well as the National Legal Defense Aid Association's conference. ([record on direct appeal,] R. 36) These conferences included specific mitigation evidence training. ([record on direct appeal,] R. 36) Further, the record shows that Ms. Penland had worked on 20 or more capital cases, including a leading role on 8 to 10 of those cases. ([record on direct appeal,] R. 37)
 "On March 9, 1995, a hearing was held in which it was represented to the Court that Penland was in Anniston working on the mitigation case. ([record on direct appeal,] R. 52) Four days later, the record reveals, Penland had the family lined up for the mitigation phase, along with a plaque and some documents. ([record on direct appeal,] R. 297) Thus, it is clear that although trial counsel may not have conducted the largest share of the mitigation preparation, Penland was working on behalf of trial counsel to prepare for a possible penalty phase.
 "During the penalty phase of Boyd's trial, trial counsel called Teresa Gilbert, Vilma Northard, Roderick Henderson, James C. Brown, Durane Allen, Barbara Franklin, William H. Butler, Walter De-wayne Garrett, Laguina Pearso, Gretta Parker, Patricia Ann Boyd McGrue, Emma Boyd, Sylvester Boyd, and Sylvester McGrue to testify on Boyd's behalf. The testimony of these witnesses reveals the depth of the investigation undertaken on Boyd's behalf. For example, James C. Brown was a previous co-worker from one of Boyd's previous jobs. According to this person's testimony, Boyd and Brown lost contact four years earlier when they left their jobs at Glenn Franklin Wood Products. ([record on direct appeal,] R. 862-863) Thus, the Court can properly infer that the defense had to track down this individual through an investigation.
 "Another witness, Barbara Franklin, was Boyd's employer at Glenn Franklin Wood Products. ([record on direct appeal,] R. 868) Again, this witness had not had contact with Boyd since May 1992. The testimony of this witness establishes that trial counsel's investigation went beyond the scope of the deficient performance alleged in the Rule 32 petition.
 "In further support of his claim, Boyd makes the allegation that his trial counsel were ineffective because `the witnesses offered no narratives of their own *Page 1137 
when testifying about [Boyd]. . . .' The Eleventh Circuit [Court of Appeals] rejected this type of ineffective assistance of counsel argument in Chandler, noting that
 "`[t]wo character witnesses were presented at the sentencing stage: Petitioner's wife and mother. Petitioner also argues that trial counsel was ineffective for his limited preparation of and for his limited questioning of the wife and mother. Petitioner contends that, if counsel had asked the right questions, the lawyer could have elicited more mitigation testimony from them. But see Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) (counsel not ineffective for failing to elicit more testimony from the witnesses because perfection is not required). Considering concerns about opening the door, a reasonable lawyer might well limit his questioning of the wife and mother: as it was, the wife and mother did escape cross-examination altogether.'
 "`The testimony that was elicited reminded the jury that Petitioner was a husband, a father, and a son: humanizing circumstances. The wife and mother addressing the jury also reminded the jury that innocent people would suffer if this man was put to death. Bringing the family's existence and pain to the attention of the jury is powerful in and of itself. See id. at 1519 (noting that, sometimes, just having a witness on the stand can humanize petitioner in eyes of jury). We cannot say the Constitution demanded that more be done with these witnesses.'
 "Chandler, 218 F.3d at 1321 n. 30. In the present case, the defense theme throughout Boyd's penalty phase was that Boyd's age, lack of significant prior history of criminal activity, Boyd's involvement in his community youth sports programs, his involvement with his children, and his friendliness to co-workers, family members, and friends warranted life [imprisonment] without parole instead of the death penalty. A review of each of these witnesses and their testimony reveals that the questioning by counsel was oriented towards eliciting facts supporting this defense.
 "In paragraph 57, Boyd alleges that trial counsel failed to talk to `numerous witnesses, including family members and friends of [Boyd].' Although these witnesses were named, the substance of each person's expected testimony is not set forth in the petition, making this claim insufficiently specific. Furthermore, to the extent the petition alleges that all of these people would have testified to Boyd's `widespread positive impact in his community, his leadership abilities, and the manner in which he guided the young children around him away from trouble,' this proffered testimony is cumulative to that which was actually elicited during the penalty phase by trial counsel. See, e.g., Bui [v. State], 717 So.2d [6,] at 22 [(Ala.Crim.App. 1997)]; Dobyne v. State, [805 So.2d 733, 755 (Ala.Crim.App. 2000), aff'd, 805 So.2d 763 (Ala. 2001)] (`Furthermore, we conclude that even if Thompson had testified at trial, much of the testimony would have been cumulative and it would not have affected Dobyne's sentence.').
 "Finally, the whole idea that one can prove ineffective assistance of counsel by bringing forth new witnesses who say they would have offered mitigation testimony if called to the witness stand is wrong as a matter of law. In Chandler, the court noted that
 "`For example, "[i]t is common practice for petitioners attacking their death sentences to submit affidavits *Page 1138 
from witnesses who say they could have supplied additional mitigating evidence, had they been called or . . . had they been asked the right questions." Waters, 46 F.3d at 1514 (en banc). But "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Id.
(noting that such witnesses show nothing more than that, "with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings"). And, basing the inquiry on whether an investigation (if one had been undertaken) would have uncovered mitigating evidence (or witnesses) is an example of judging counsel's acts from the benefit of hindsight. The proper inquiry was articulated in Rogers v. Zant: "Once we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced." 13 F.3d 384, 388 (11th Cir. 1994).'
 "Chandler, 218 F.3d at 1316 n. 20 (emphasis added). See also, Bui v. State, 717 So.2d 6, 22
(Ala.Crim.App. 1997) (`We cannot say that trial counsel's performance was deficient simply because he did not call every witness who conceivably may have been willing to testify at the sentencing phase of the trial.'). When one applies the correct legal standard, then, it is clear that Boyd's assertions in the Rule 32 petition are not meritorious on their face. The correct question is: Could Boyd's trial counsel reasonably decide to quit investigating further mitigation witnesses upon finding and preparing the witnesses who did, in fact, testify at trial?
 "The answer to this question is yes. Among those who were called to testify were a former co-worker, a former employer, Boyd's girlfriend (who is also the mother of one of Boyd's children), an ex-girlfriend who is the mother [of] another of Boyd's children, Boyd's stepfather, Boyd's grandmother, members of Boyd's neighborhood who had been touched or positively impacted by Boyd's generosity or kind acts, and those who knew of Boyd's impact as a volunteer with Little League basketball. A reasonable lawyer could have concluded that this type of mitigation defense would be sufficient.
 "For these reasons, the Court finds that this claim in the Rule 32 petition is insufficient to warrant any further proceedings. Accordingly, this claim is dismissed. Ala. R.Crim. P., [Rules] 32.3, 32.6(b), and 32.7(d).
 "Having presided over several capital murder trials, I am personally familiar with the work of the Alabama Prison Project. These experts provide assistance to capital defendants to prepare them for the penalty phase of a capital murder trial. The testimony offered at the penalty phase of Boyd's trial is consistent with [Boyd's] having had the assistance of the Alabama Prison Project. I am convinced that Boyd's case benefitted from the work of Ms. Penland."
(C. 489-96.)
We agree with the circuit court's findings, and we adopt them as part of this opinion. As with Boyd's previous claims of ineffective assistance of counsel, his claim in this regard does not provide a "clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Rule 32.6(b), Ala. R.Crim. P. (Emphasis added.) As the circuit correctly found, Boyd's petition does not suggest a specific *Page 1139 
alternate defense that his counsel should have pursued during the penalty phase of the trial; does not disclose a particular mitigating factor that would have been revealed had counsel investigated and prepared for the penalty phase in some other manner; and does not disclose the substance of the expected testimony of any of the potential mitigation witnesses whom counsel allegedly failed to interview. Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded.
Moreover, the judge presiding over the Rule 32 proceedings also presided over Boyd's trial and dismissed this claim based on his own observations and personal knowledge that Boyd's counsel was prepared for and did present a reasonable defense during the penalty phase of Boyd's trial. We have reviewed the record and find that it fully supports the circuit court's determination in this regard. Specifically, we agree with the circuit court's finding that Lucia Penland, a mitigation specialist with the Alabama Prison Project, provided Boyd's counsel with ample and valuable assistance in locating and preparing mitigation witnesses for the penalty phase of the trial. We also agree with the circuit court's finding that, to the extent Boyd alleges that certain potential mitigation witnesses whom his counsel allegedly failed to interview would have testified to Boyd's "widespread positive impact in his community, his leadership abilities, and the manner in which he guided the young children around him away from trouble," such testimony would have been cumulative of testimony that was actually elicited by Boyd's counsel during the penalty phase of the trial. Unpresented cumulative testimony does not establish that counsel was ineffective. See Pierce v.State, 851 So.2d 558, 582 (Ala.Crim.App. 1999), rev'd on other grounds, 851 So.2d 618 (Ala. 2002) ("`Trial counsel's performance was not "outside the wide range of professionally competent assistance" simply because they failed to present evidence that would have been cumulative of other evidence presented at trial.'").
Moreover, "counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence." Williams v. State, 783 So.2d 108, 117
(Ala.Crim.App. 2000). "`There ha[s] never been a case where additional witnesses could not have been called.'" Fortenberryv. State, 659 So.2d 194, 199 (Ala.Crim.App. 1994), quotingState v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App. 1993).
 "Considering all the evidence introduced during the guilt and penalty phases of the trial, we cannot see how the evidence that the appellant argues should have been elicited at the penalty phase would have had any impact on his sentence. It certainly would not have changed the outcome, and it did not render the sentencing fundamentally unfair or unreliable."
Pierce, 851 So.2d at 583.
Boyd has not alleged how his trial counsel's conduct was deficient or how the outcome of his trial would have been different had his trial counsel performed differently regarding this claim. Therefore, he has failed to state a claim of ineffective assistance of counsel under Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Boyd failed to state a claim upon which relief could be granted, summary disposition of this claim was appropriate.
 2. Brady Claim
Boyd contends that the prosecution violated Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (See Issues IV.B, IV.C, and IV.D of Boyd's *Page 1140 
appellate brief.)[10] Boyd's claim in this regard was asserted in Claim II, paragraphs 66-70, of his petition, as follows:
 "66. Law enforcement and prosecuting officials failed to turn over exculpatory material and mitigating evidence to [Boyd's] defense counsel in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State had a heightened obligation to provide this evidence in [Boyd's] case, as [Boyd] was charged with a capital crime. Ex parte Monk, 557 So.2d 832 (Ala. 1989).
 "67. The State failed to provide exculpatory statements made by [Boyd] while he was in police custody and at the District Attorney's office, prior to being charged with the crime. Such exculpatory statements could have demonstrated [Boyd's] consistent, unaltered claims of innocence of the crime for which he was later charged.
 "68. The State also failed to provide the defense with exculpatory and mitigating evidence, including impeachment evidence, from its repeated interviews with [Boyd's] codefendants, Quintay Cox, Shawn Ingram, and Marcell Ackles. The State met numerous times with all of the codefendants, and all were held in custody for several extended periods; however, the State neglected to turn over statements by each codefendant that would have been considered exculpatory in [Boyd's] trial.
 "69. Furthermore, the State neglected to provide the defense with conflicting statements made by several State witnesses. It also failed to turn over the defense agreements made with some State witnesses with criminal records. The State's obligation to turn over evidence that may be used to impeach witnesses is identical to its obligations to provide exculpatory evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
 "70. The State's violation of Brady v. Maryland
significantly hampered [Boyd's] ability to prepare his case. The evidence withheld would have lent credit to [Boyd's] defense, and would have cast doubt upon State witnesses' testimony against [Boyd], creating a reasonable probability that, were it not for these violations, the outcome of the trial and sentencing would have been different. The State's failure to turn over this evidence to [Boyd] denied him his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama law. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481
(1985); Green v. Georgia 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979)."
(C. 411-12.)
With regard to this claim, the circuit court found as follows: *Page 1141 
 "The Court finds that paragraph 66 fails to state an independent claim for relief.
 "Paragraph 67, however, alleges a Brady violation based on the State's alleged failure to `provide exculpatory statements made by [Boyd] while he was in police custody at the District Attorney's office.' (Boyd's Pet. at p. 21, para. 67) This allegation cannot form the basis for a valid Brady claim.
 "Boyd, by his own allegation, was present during this questioning and thus he was aware of anything that was said during that time period. Thus, he cannot establish a Brady violation as a matter of law. See, e.g., In re Magwood, 113 F.3d 1544, 1548 (11th Cir. 1997) (`Petitioner and his attorneys therefore had personal knowledge of the proceeding, and that knowledge is imputed to his later attorneys.'); Felker v. Turpin, 101 F.3d 657 (11th Cir. 1996) (`In rejecting this specific Brady claim, the Superior Court of Butts County pointed out that because Felker was the one being interviewed by Officer Enckler, he can hardly claim that the questions he was asked were suppressed from him by the state. At all relevant times, Felker knew what Enckler had asked him and when. Felker v. Turpin, No. 96-V-655 (Sup.Ct. Butts County Nov. 12, 1996). Putting that problem with Felker's theory to the side, it is readily apparent that there are two other glaring problems with it.'). This claim is dismissed pursuant to Rule 32.7(d) for failure to state a claim upon which relief may be granted. Ala. R.Crim. P., [Rule] 32.7(d).
 "The Court would note that the assertions in paragraph 67 are insufficiently specific to warrant further proceedings. Ala. R.Crim. P., [Rule] 32.6(b). Boyd does not allege the substance of his `exculpatory' statements. Thus, Boyd has failed to carry his burden under Rules 32.3 and 32.6(b). This finding supports the Court's dismissal of this assertion.
 "Paragraphs 68-69 are dismissed for failure to comply with the specificity requirements of Rule 32. Ala. R.Crim. P., [Rules] 32.3[and] 32.7(d). In paragraph 68, Boyd failed to allege the substance of any exculpatory statements made by codefendants. Thus, this paragraph is nothing more that `a bare allegation that a constitutional right has been violated and mere conclusions of law,' that are `not sufficient to warrant any further proceedings.' Ala. R.Crim. P., [Rule] 32.6(b).
 "Although paragraph 69 asserts that agreements made with state witnesses with criminal records were not turned over to Boyd, Petitioner has failed to name the specific witnesses or what the `agreements' allegedly were. Also, Boyd has failed to name those witnesses who allegedly gave conflicting statements. Thus, this claim is dismissed. Ala. R.Crim. P., [Rule] 32.6(b).
 "In addition, this claim is procedurally barred as it could have been but was not raised at trial. Ala. R.Crim. P., [Rule] 32.2(a)(3). In its original answer, as well as in its amended answer, the State of Alabama asserted this procedural bar. According to Rule 32.3 of the Alabama Rules of Criminal Procedure, `The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.' (emphasis added). Petitioner has never attempted to disprove the existence of this ground of preclusion, despite the passage of over a year since the State filed its original answer. Furthermore, this claim in the Rule 32 petition does not contain an assertion that any alleged suppression by the *Page 1142 
state continued until such time as the claim could not have been raised at trial. Thus, the Court finds that this procedural default exists based on Boyd's failure to disprove it."
(C. 497-99.)[11]
We agree with the circuit court's findings, and we adopt them as part of this opinion. First, the circuit court correctly ruled that Boyd's Brady claim is procedurally barred. Boyd did not assert in his petition that the claim was based on newly discovered evidence or that any alleged suppression by the State continued until such time as the claim could not have been raised at Boyd's trial. Therefore, the circuit court correctly found the claim to be procedurally barred under Rule 32.2(a)(3), Ala. R.Crim. P., because it could have been raised at trial, but was not. Moreover, the claim is procedurally barred under Rule 32.2(a)(5), Ala. R.Crim. P., because it could have been raised on direct appeal, but was not. See Williams v. State,782 So.2d 811, 818 (Ala.Crim.App. 2000) (finding an alleged Brady
violation to be subject to procedural bars of Rule 32.2(a), Ala. R.Crim. P.). See also, e.g., Boyd v. State, 746 So.2d 364, 408
(Ala.Crim.App. 1999).
Moreover, the circuit court correctly found that Boyd's claim in this regard does not provide a "clear and specific statement of the grounds upon which relief is sought, including fulldisclosure of the factual basis of those grounds." Rule 32.6(b), Ala. R.Crim. P. (Emphasis added.) As the circuit court found, Boyd's petition does not disclose the substance of Boyd's alleged exculpatory statements; does not disclose the substance of any exculpatory statements allegedly made by Boyd's codefendants; does not disclose the name of any specific State witness with a criminal record that was not turned over to Boyd; does not disclose the name of any specific State witness who made an "agreement" with the prosecution; and does not disclose the name of any specific State witness who allegedly gave conflicting statements. Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Summary disposition of this claim was appropriate.
 3. Other Claims: Alleged Trial Errors
Boyd contends that several alleged trial errors resulted in a denial of his right to due process. (Issue VIII of Boyd's appellate brief.) In its order dismissing Boyd's petition, the circuit court found that Boyd's claims in this regard were precluded by Rule 32.2(a), Ala. R.Crim. P. "`"[T]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v.Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993).'" Williams v.State, 783 So.2d 108, 112 (Ala.Crim.App. 2000), quotingBrownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995). See also, e.g., Nicks v. State, 783 So.2d 895, 901 (Ala.Crim.App. 1999); Grayson v. State, 675 So.2d 516, 519 (Ala.Crim.App. 1995).
The circuit court correctly ruled that the following claims in Boyd's petition are procedurally barred pursuant to Rules 32.2(a)(2) and (4), Ala. R.Crim. P., because they were raised and addressed at trial and on direct appeal:
1. Boyd's allegation, in Claim III, paragraphs 71-75, of his petition, that the prosecution obtained a conviction by "intentionally using irrelevant and highly *Page 1143 
prejudicial penalty-phase evidence at the guilty phase of [Boyd's] trial."
2. Boyd's allegation, in Claim V, paragraphs 79-81, of his petition, that the trial court committed reversible error by denying his motion for a continuance.
3. Boyd's allegation, in Claim VI, paragraphs 82-84, of his petition, that the trial court erred by improperly allowing the State to introduce evidence of Boyd's prior bad acts.
4. Boyd's allegation, in Claim X, paragraphs 104-106, of his petition, that the trial court improperly granted the State's challenges for cause as to several prospective jurors.
The circuit court correctly ruled that the following claims in Boyd's petition are procedurally barred pursuant to Rules 32.2(a)(3) and (4), Ala. R.Crim. P., because they could have been but were not raised at trial, but were raised and addressed on direct appeal:
1. Boyd's allegation, in Claim IV, paragraphs 76-78, of his petition, that the trial court erred by failing to instruct the jury on the lesser-included offense of felony murder.
2. Boyd's allegation, in Claim VII, paragraphs 85-87, of his petition, that the trial court gave an improper kidnapping instruction to the jury.
3. Boyd's allegation, in Claim VIII, paragraphs 88-90, of his petition, that the trial court's penalty-phase instructions regarding aggravating and mitigating circumstances were improper.
4. Boyd's allegation, in Claim IX.A, paragraphs 92-93, of his petition, that the prosecutor improperly told the jury not to consider evidence favorable to the defense.
5. Boyd's allegation, in Claim IX.B, paragraphs 94-96, of his petition, that the prosecutor improperly contrasted the rights of Boyd with those of the victim.
6. Boyd's allegation, in Claim IX.C, paragraph 97, of his petition, that the trial court erred in allowing inadmissible hearsay testimony into evidence.
7. Boyd's allegation, in Claim IX.D, paragraphs 98-100, of his petition, that the prosecution improperly used leading testimony as a means of introducing evidence.
8. Boyd's allegation, in Claim IX.E, paragraphs 101-103, of his petition, that the prosecutor improperly expressed his personal opinion regarding the evidence presented at trial.
9. Boyd's allegation, in Claim XI, paragraphs 107-109, of his petition, that the trial court erred by improperly excluding several prospective jurors based on their personal circumstances and hardships.
10. Boyd's allegation, in claim XII, paragraphs 110-116, of his petition, that the trial court's instruction on reasonable doubt was erroneous.
11. Boyd's allegation, in Claim XIII, paragraphs 117-120, of his petition, that the manner of execution used by the State of Alabama is unconstitutional.
 4. "Cumulative Effect" of Alleged Trial Errors
In Issue VIII of his appellate brief, Boyd also argues that the cumulative effect of the alleged trial errors raised in his petition and listed above resulted in a denial of his right to due process. This specific claim was not presented to the circuit court in Boyd's Rule 32 petition and is raised for the first time on appeal. Accordingly, *Page 1144 
it is not properly before us for review. See, e.g., Arrington v.State, 716 So.2d 237, 239 (Ala.Crim.App. 1997) (holding that "[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition"). See also, e.g., McGahee v. State, 885 So.2d 191,224 (Ala.Crim.App. 2003). Moreover, such a claim could have been raised at trial and on direct appeal, but was not; therefore, it is subject to preclusion by Rules 32.2(a)(3) and (5), Ala. R.Crim. P.
 VI.
We note that the following claims of ineffective assistance of counsel were raised by Boyd in his Rule 32 petition and were addressed by the circuit court in its order of dismissal, but were not pursued by Boyd on appeal:
1. Boyd alleged that the trial court's denial of his motion for a continuance "amounted to a denial of effective assistance of counsel." (Claim I.B., paragraphs 13-15, of Boyd's petition.)
2. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's failure to instruct the jury on the lesser-included offense of felony murder. (Claim I.C.3(a), paragraph 23, of Boyd's petition.)
3. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's "reasonable doubt" instruction. (Claim I.C.3(b), paragraph 24, of Boyd's petition.)
4. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's kidnapping instruction. (Claim I.C.3(c), paragraph 25, of Boyd's petition.)
5. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's penalty-phase instructions regarding aggravating and mitigating circumstances. (Claim I.C.3(d), paragraph 26, of Boyd's petition.)
6. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's rulings granting the State's challenges for cause as to several prospective jurors. (Claim I.C.3(e), paragraph 27, of Boyd's petition.)
7. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's rulings excluding several prospective jurors based on their personal circumstances and hardships. (Claim I.C.3(f), paragraph 28, of Boyd's petition.)
8. Boyd alleged that his trial counsel rendered ineffective assistance by failing to request that the trial court "individually voir dire jurors after an outburst in the courtroom." (Claim I.C.3(g), paragraphs 29-31, of Boyd's petition.)
9. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the trial court's colloquy with codefendant Quintay Cox after Cox indicated that he intended to break an agreement he had entered into with the State in exchange for his testimony. (Claim I.C.3(h), paragraphs 32-33, of Boyd's petition.)
10. Boyd alleged that his trial counsel rendered ineffective assistance by failing "to adequately argue and win a favorable ruling on [a] motion for judgment of acquittal." (Claim I.C.3(i), paragraph 34, of Boyd's petition.)
11. Boyd alleged that his trial counsel rendered ineffective assistance by failing to adequately argue and win a favorable ruling on a motion for a new trial. (Claim I.C.3(j), paragraph 35, of Boyd's petition.)
12. Boyd alleged that his trial counsel rendered ineffective assistance by failing *Page 1145 
to object to the trial court's failure to inform the jury that it could consider mercy and sympathy in determining whether Boyd should receive a sentence of death. (Claim I.C.3(k), paragraphs 36-38, of Boyd's petition.)
13. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the constitutionality of Alabama's capital-sentencing scheme. (Claim I.C.3(l), paragraphs 39-40, of Boyd's petition.)
14. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the State's alleged failure to prove accomplice corroboration at trial. (Claim I.C.3(m), paragraph 41, of Boyd's petition.)
15. Boyd alleged that his trial counsel rendered ineffective assistance by failing to adequately move for a change of venue. (Claim I.C.3(n), paragraphs 42-43, of Boyd's petition.)
16. Boyd alleged that his trial counsel rendered ineffective assistance by failing to adequately challenge the manner of execution used by the State of Alabama. (Claim I.C.3(o), paragraph 44, of Boyd's petition.)
17. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's telling the jury not to consider evidence favorable to the defense. (Claim I.C.4, paragraph 46, of Boyd's petition.)
18. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the prosecution's use of allegedly inadmissible hearsay. (Claim I.C.4, paragraph 47, of Boyd's petition.)
19. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the prosecution's "use of leading testimony as a means of introducing evidence into the record." (Claim I.C.4, paragraph 48, of Boyd's petition.)
20. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's "expressions of personal opinion regarding the evidence in both phases of the trial." (Claim I.C.4, paragraph 49, of Boyd's petition.)
21. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object when the prosecutor "contrasted the rights of [Boyd] with the rights of the victim." (Claim I.C.4, paragraph 50, of Boyd's petition.)
22. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's "improper definition of reasonable doubt." (Claim I.C.4, paragraph 51, of Boyd's petition.)
23. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object, during the penalty phase of the trial, to the prosecutor's "expressions of his personal opinion of [Boyd's] sentence." (Claim I.D.2, paragraph 62, of Boyd's petition.)
24. Boyd alleged that his trial counsel rendered ineffective assistance by failing to object, during the penalty phase of the trial, to the prosecutor's comments "denigrat[ing] . . . the jury's role in the sentencing process." (Claim I.D.2, paragraphs 63-64, of Boyd's petition.)
Claims presented in a Rule 32 petition but not pursued on appeal are deemed to be abandoned. See Brownlee v. State,666 So.2d 91, 93 (Ala.Crim.App. 1995) (holding that "[w]e will not review issues not listed and argued in brief"). See also, e.g.,Charest v. State, 854 So.2d 1102, 1105 (Ala.Crim.App. 2002);Lawhorn v. State, 756 So.2d 971, 994 (Ala.Crim.App. 1999). Accordingly, we will not *Page 1146 
review the claims of ineffective assistance of counsel listed above.[12]
 VII.
Boyd contends that his death sentence is unconstitutional under the United States Supreme Court's recent decision in Ring v.Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because his sentence was imposed pursuant to a capital-sentencing scheme that allows the trial judge, rather than the jury, to make the ultimate determination whether to impose the death penalty. (Issue V in Boyd's appellate brief.)
In Ring, the Supreme Court overruled Walton v. Arizona,497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), to the extent that it allowed the judge, not the jury, to find an aggravating circumstance that supported a death sentence and decided that its earlier holding in Apprendi v. New Jersey, 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applied to Arizona's death-penalty scheme. See Ring, 536 U.S. at 589, 122 S.Ct. 2428
("Capital defendants, no less than noncapital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."). Apprendi had announced the rule that "[o]therthan the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added); see also Ring, 536 U.S. at 602, 122 S.Ct. 2428.
Because Ring is merely an extension of Apprendi to the context of death-penalty cases, see, e.g., Turner v. Crosby,339 F.3d 1247, 1284 (11th Cir. 2003), a "Ring claim" is treated as a version of an "Apprendi claim." This court has recognized that Apprendi claims are nonjurisdictional, Poole v. State,846 So.2d 370, 385-87 (Ala.Crim.App. 2001), and thus are subject to the general rules of preservation. See also Hale v. State,848 So.2d 224, 232-33 (Ala. 2002). Boyd's Ring claim was not presented in the Rule 32 petition, so it is not properly before this court for review. See McGahee v. State, 885 So.2d 191, 228
n. 9 (Ala.Crim.App. 2003). See also, e.g., Arrington v. State,716 So.2d 237, 239 (Ala.Crim.App. 1997).
We note that this court has held that Apprendi claims are not applied retroactively to postconviction proceedings. Sanders v.State, 815 So.2d 590, 592 (Ala.Crim.App. 2001). Our retroactivity analysis of Apprendi applies equally to Ring.
Accordingly, Ring claims are not applied retroactively to postconviction proceedings. Therefore, Boyd's suggestion thatRing applies retroactively to his death sentence is without merit.[13]
 VIII.
Boyd contends that he is entitled to a determination whether his sentence of *Page 1147 
death violates the United States Supreme Court's recent holding in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242,153 L.Ed.2d 335 (2002). (Issue VI in Boyd's appellate brief.)
In Atkins, the Supreme Court held:
 "We are not persuaded that the execution of mentally retarded criminals will measurably advance the deterrent or the retributive purpose of the death penalty. Construing and applying the Eighth Amendment in the light of our `evolving standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution `places a substantive restriction on the State's power to take the life' of a mentally retarded offender."
536 U.S. at 321, 122 S.Ct. 2242.[14] In his brief to this court, Boyd asserts:
 "In this case, a number of facts indicate that [Boyd] may suffer from diminished capacities and culpability. [Boyd] grew up in neighborhoods contaminated with a chemical known to impact the temper and control of those who come in contact with it. [Boyd] also experienced severe trauma as a youth, including acute distress related to acts of intra-familial violence and rape. There is a good possibility that [Boyd] may be the victim of a disorder that would impact his ability to communicate, reason, and control his impulses. See Atkins, 536 U.S. at 349, 122 S.Ct. 2242.
 ". . . . As a result of his impairments, [Boyd] may belong to a category of those suffering from `deficiencies [that] do not warrant an exemption from criminal sanctions, but [that] do diminish their personal culpability' to a point at which they `should be categorically excluded from execution.' Atkins, 536 U.S. at 349, 122 S.Ct. 2242. To execute [Boyd] without permitting a basic inquiry into the effects of his deficiencies and the level of his culpability would be cruel and unusual and would constitute a violation of the Eight and Fourteenth Amendments."
(Boyd's brief at pp. 68-69.)
We seriously question whether the vague assertions in Boyd's brief raise an issue whether, under even the broadest definition of mental retardation, Boyd is mentally retarded. In any event, Boyd's "Atkins claim" was not presented in his Rule 32 petition, and there is nothing in the record before us suggesting that, even when applying the most liberal definition of mental retardation, Boyd is mentally retarded. See Ex parte Smith, [Ms. 1010267, March 14, 2003] ___ So.2d ___, ___ (Ala. 2003); Exparte Perkins, 851 So.2d 453, 455-56 (Ala. 2002); Peraita v.State, 897 So.2d 1161, 1206-07 (Ala.Crim.App. 2003). Accordingly, there is nothing for us to review as to this claim, and Boyd has not demonstrated that he is entitled to have this case remanded to the circuit court for further proceedings as to this claim. See Fincher v. State, 837 So.2d 876, 881
(Ala.Crim.App. 2002) ("This Court will not remand a case to the circuit court to hold an evidentiary hearing on a jurisdictional claim that was not presented in the petitioner's Rule 32 petition unless facts appear in the record affirmatively showing a lack of jurisdiction.").
 IX.
Boyd contends that "the lack of qualified counsel both at trial and on collateral review" creates "a substantial risk" that an actually innocent person will be *Page 1148 
executed in Alabama. (Issue VII in Boyd's appellate brief, p. 70.) This claim was not presented in Boyd's Rule 32 petition, so it is not properly before this court for review. See, e.g.,McGahee v. State, 885 So.2d 191, 224 (Ala.Crim.App. 2003);Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App. 1997).
 CONCLUSION
For the foregoing reasons, we affirm the judgment of the circuit court.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] All of Boyd's filings in this case — in the circuit court and in this court — were through counsel.
[2] The State requested permission to file an amended answer based on "changed circumstances," arguing that Boyd had neglected his duty to prosecute the case and had thereby prejudiced the State's ability to retry him if he were to obtain the relief sought in his petition. The circuit court granted the State's motion for leave to file the amended answer on March 1, 2002.
[3] The circuit court indicated that, in dismissing Boyd's petition, it had considered "the Rule 32 petition presented to the Court, the evidence presented at trial, the State of Alabama's answer [and] amended answer with supporting documents, the events within the personal knowledge of the Court, and the State of Alabama's motion to dismiss the petition." (C. 454.)
[4] Boyd was represented by counsel throughout this 31-month period.
[5] The record reflects that Boyd filed (1) a motion for discovery of the prosecution's files; (2) a motion for discovery of all institutional records pertaining to Boyd that had been generated by the Department of Corrections, the Department of Mental Health and Mental Retardation, the Board of Pardons and Paroles, and any medical or mental-health provider; (3) an ex parte application for funds to pay a forensic pathologist; and (4) an ex parte application for funds to pay a private investigator. In Ex parte Land, 775 So.2d 847 (Ala. 2000), the Alabama Supreme Court held that discovery is not automatic under Rule 32, Ala. R.Crim. P., and that "good cause" is the standard by which to judge Rule 32 discovery motions. 775 So.2d at 852. The Supreme Court cautioned that "postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.'"775 So.2d at 852, quoting People v. Gonzalez, 51 Cal.3d 1179, 1260,800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990). Boyd's discovery motions contained broad requests, in boiler-plate language, for State files, with no attempt to relate the requests to specific claims in his Rule 32 petition. We note that this court inWilliams v. State, 783 So.2d 108, 113-14 (Ala.Crim.App. 2000), held that Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation. See also McGaheev. State, 885 So.2d 191, 229 (Ala.Crim.App. 2003).
[6] In its order of dismissal, the circuit court stated as follows:
 "Because the Court is dismissing this petition pursuant to Rule 32.7(d) and Rule 32.2, no evidentiary hearing is required. At no point does the petition allege a material issue of fact that cannot be resolved by resort to the record, the supporting documents (appellate briefs) presented by the State, or by the objective deficient performance standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "After reviewing all of the pleadings and motions filed by both parties, I have not found that there is any issue that cannot be settled without some testimony or evidence that is not already before the Court or within my memory of this case."
(C. 457.)
[7] In arguing in support of these ineffective-assistance-of-counsel claims in his appellate brief, Boyd cites to information contained in his amended petition as well as to information contained in his original petition. However, as indicated above (see Part IV of this opinion), we will consider only the factual allegations contained in Boyd's original petition in our analysis of whether the circuit court correctly dismissed Boyd's claims, because those allegations contained only in Boyd's amended petition, and not in his original petition, are not properly before us. In his appellate brief, Boyd also asserts two separate claims of ineffective assistance of counsel that were contained only in his amended petition. (See Issues I.A.4 and I.A.5 of Boyd's appellate brief.) For the reasons stated above, these claims are also not properly before us and will not be discussed in this opinion.
[8]Nor does the petition disclose the names of the witnesses counsel allegedly failed to adequately cross-examine.
[9] We note that in Claim I.A., paragraphs 10 through 12, of his petition, Boyd alleged that his trial counsel were unable to adequately prepare his case, and were therefore ineffective, in part because the compensation of court-appointed attorneys for out-of-court work, as set forth in § 15-12-21, Ala. Code 1975, is "grossly inadequate." (C. 394.) As the circuit court correctly found in its order dismissing Boyd's petition, Alabama's appellate courts have repeatedly rejected the claim that Alabama's statutory scheme for compensating attorneys in capital cases, in and of itself, denies a defendant effective representation. See, e.g., Ex parte Grayson, 479 So.2d 76,79-80 (Ala. 1985); Bui v. State, 717 So.2d 6, 15 (Ala.Crim.App. 1997). Boyd alleged no facts in his petition to support his claim that the compensation scheme in § 15-12-21, Ala. Code 1975, resulted in deficient performance by his trial counsel or affected the outcome of his trial. Therefore, he failed to state a claim of ineffective assistance of counsel under Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In addition, the circuit court correctly determined that this claim was procedurally barred pursuant to Rule 32.2(a)(4), Ala. R.Crim. P., because it was raised and addressed on direct appeal. See McGahee v. State, 885 So.2d 191, 207 (Ala.Crim.App. 2003) (holding that a similar claim in a Rule 32 petition was procedurally barred because it was raised at trial and because it was raised on direct appeal). In his appellate brief, in arguing in support of his contention that his trial counsel were unable to adequately prepare his case because of the compensation set forth in § 15-12-21, Ala. Code 1975, Boyd cites mostly to information contained only in his amended petition. As we indicated in Part IV of this opinion, we will consider only the factual allegations in Boyd's original petition in our analysis of whether the circuit court correctly dismissed Boyd's claims; the allegations contained only in Boyd's amended petition, and not in his original petition, are not properly before us.
[10] In his appellate brief, in arguing in support of his contention that Brady v. Maryland was violated at his trial, Boyd cites to information contained in his amended petition as well as to information contained in his original petition. As we indicated in Part IV of this opinion, we will consider only the factual allegations contained in Boyd's original petition in our analysis of whether the circuit court correctly dismissed Boyd's claims; the allegations contained only in Boyd's amended petition, and not in his original petition, are not properly before us. In his appellate brief, Boyd also asserts three separate Brady violations that were asserted only in his amended petition. (See Issues IV.A, IV.E, and IV.F of Boyd's appellate brief.) For the reasons stated above, those claims are also not properly before us; we will therefore not discuss them in this opinion.
[11] In dismissing Boyd's Brady claim, the circuit court did not specifically address paragraph 70 of Boyd's petition. However, it appears that the circuit court found that paragraph 70, like paragraph 66, failed to state an independent claim for relief.
[12] We note that the substantive claims underlying many of the allegations of ineffective assistance of counsel in Boyd's petition were raised and addressed on direct appeal, and no error was disclosed. See Boyd v. State, 715 So.2d 825 (Ala.Crim.App. 1997), and Ex parte Boyd, 715 So.2d 852 (Ala. 1998).
[13] We note that Boyd's specific argument that his death sentence violates Ring because it was imposed pursuant to a capital-sentencing scheme that allows the trial judge, rather than the jury, to make the ultimate sentencing determination has been rejected by this court. See, e.g., Duke v. State,889 So.2d 1, 40 (Ala.Crim.App. 2002) (opinion on return to remand);Clark v. State, 896 So.2d 584, 597 (Ala.Crim.App. 2000) (opinion on return to remand); Tomlin v. State, 909 So.2d 213,281 (Ala.Crim.App. 2002) (opinion on application for rehearing);Turner v. State, [Ms. CR-99-1568, November 22, 2002] ___ So.2d ___, ___ (Ala.Crim.App. 2002).
[14] This court has held that the mandate of Atkins applies retroactively to all cases, including postconviction proceedings.Clemons v. State, [Ms. CR-01-1355, August 29, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003).